

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| LINDA BROWN and BETH ABERNATHY, | § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| SIKORA & ASSOCIATES, INC. and THE FIDELITY GROUP, INC., | § § § | |
| Defendants, | § § | |
| and | § | CIVIL ACTION NO. 6:04-579-HFF |
| SIKORA & ASSOCIATES, INC., | § § § | |
| Third Party Plaintiff, | § § | |
| v. | § § | |
| STEVEN E. EDWARDS, MICHAEL SAMUELSON, BOB W. STOREY, and DON YOST, | § § § § | |
| Third Party Defendants. | § § | |

### MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

This is an ERISA case.  In addition to the federal claim, Third Party Plaintiff Bob W. Storey (Storey) alleges several state causes of action.  Pending before the Court is Storey's motion for

summary judgment. Having carefully considered the motion, the response, the reply, the record, the arguments of counsel, and the applicable law, the Court will grant Storey's motion.

## II. FACTUAL AND PROCEDURAL HISTORY[1]

Sikora and Associates, Inc. (Sikora) has been a Professional Employee Organization (PEO) since 1988. A PEO operates much like an outsourced Human Resources and Employee Benefits Department. A PEO's customers are other corporations who wish to (1) be relieved of the administrative burdens associated with human resources functions, payroll, and benefits; and/or (2) save money on benefits by joining an organization with more employees, and thus, greater bargaining power. When the PEO finds a customer, the PEO and customer enter into an agreement whereby the customer terminates its employees. The PEO immediately hires the employees. The customer's employees then go on the PEO's payroll and benefit plans. Those employees are then leased back to the customer company.

Steve Edwards and Magna Corporation (Magna) solicited Sikora about allowing Magna to offer benefits to Sikora's employees. Sikora first began securing workers compensation insurance from Magna, which was run by Bob Storey. Things went well under that plan; therefore, Sikora decided to secure health insurance benefits through Magna in 1999. Over the course of the business relationship, the reinsurer changed a number of times. Additionally, Storey incorporated The Fidelity Group (Fidelity) in 2000 and converted the name of the plan from the Magna Plan to the Fidelity Group plan.

---

[1] As required, when analyzing a motion for summary judgment, the Court views the facts– and recites them here–in a light most favorable to the non-moving party (Sikora).

2

By May 2000, employees began complaining that their claims were not being paid. Sikora made calls to Storey, Edwards and Tim Martin inquiring about why claims were not being paid. From June 2000 to August 2000, Sikora noticed that when complaints were made, a claim would be paid, but none of the other claims were being paid. By late August 2000, all payments ceased. Sikora continued to call, always being told that the money was with the third party administrator, but that the third party administrator was behind on making payments.

In September 2000, Sikora received a letter from Fidelity claiming that Fidelity was undercapitalized to pay claims and that the alleged insurer of the plan was no longer a viable carrier. However, Fidelity contended that it had secured a reliable carrier and a new third party administrator. Around the same time, Sikora received correspondence from the third party administrator stating that Fidelity had ceased providing assets to fund the plan, and therefore the third party administrator would no longer be serving in that capacity.

On February 6, 2001, Sikora received a letter from Fidelity stating that Sikora's losses had far surpassed the amount of premiums Sikora had remitted to Fidelity and that Magna, as a PEO, could not bear the costs of paying the outstanding claims. The letter further advised that each PEO in the partnership would have to take responsibility for proper underwriting and monitoring of its clients. This indicated to Sikora that there was no reinsurance and that the plan was actually self-insured.

In March 2001, the last known third party administrator ceased processing claims because of lack of funding by Fidelity. On March 26, 2001, Sikora received a letter from Fidelity, stating that the plan was terminated, effective March 16, 2001, and that each PEO was considered to be

maintaining its own single employer health care plan. Sikora secured another plan by the end of March 2001.

Thereafter, the Department of Consumer Affairs began investigating Sikora. In response, Sikora assured the Department that it would do everything possible to see that all claims would be paid. The Department refused to reissue Sikora's license to operate as a PEO. The Department then gave Notice of a Hearing and a Petition to suspend Sikora and Associates, Inc. and Jim Sikora, individually, citing use of self-funded plans. As a result, Sikora agreed to review all claims and pay those that would have been covered under the plan. Additionally, Sikora paid a fine to the Department.

Linda Brown and Beth Abernathy, participants under the plan, sued Sikora and Fidelity, seeking benefits alleged to be due under the terms of the ERISA group health plan. Sikora cross-claimed against Fidelity, asserting that Fidelity was ultimately liable for the payment of any benefit to which Plaintiffs are entitled, and joined Steven Edwards, Michael Samuelson, Bob Storey, and Don Yost as individual third party defendants, alleging that they are likewise liable to Sikora as the alter egos of Fidelity. Sikora reached a settlement agreement with Brown and Abernathy; the Clerk entered default judgment as to Fidelity; the Court dismissed Yost; and the Clerk filed an entry of default as to Samuelson and Edwards. The only remaining claims are those claims Sikora asserted against Storey. Storey filed the pending motion for summary judgment, arguing that (1) Sikora lacks standing to maintain its claims against Storey; (2) this Court is without personal jurisdiction over Storey; and (3) venue is improper in this district.

### III.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23. Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts.

5

Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

## IV.    DISCUSSION

Storey contends that (1) Sikora lacks standing to maintain its claims against Storey; (2) this Court is without personal jurisdiction over Storey; and (3) venue is improper in this district. Because the Court agrees that Sikora lacks standing to bring a claim under ERISA, the personal jurisdiction and venue arguments will not be addressed.

### A.    Sikora's Standing Under ERISA

Storey asserts that Sikora is without standing to bring this ERISA claim because Sikora is not a participant, beneficiary, or fiduciary. Civil actions under ERISA may be brought by "participants," "beneficiaries," or "fiduciaries." 29 U.S.C. § 1132(a). It is uncontroverted that

Sikora is neither a participant[2] nor a beneficiary[3] as defined under the statute. However, Sikora argues that it brings its claims as an assignee of participants and beneficiaries of the plan and is thus a beneficiary of the plan. Sikora also alleges that it voluntarily undertook the responsibility of a fiduciary of the plan and can, therefore, bring its claims as a fiduciary.

### 1. Assignment Under ERISA

Sikora argues that it should be treated as a beneficiary of the plan because Sikora brings its claims as an assignee of participants and beneficiaries of the plan. Courts have considered claims brought by claimants not meeting ERISA's definitions of "participant" or "beneficiary" under the doctrine of derivative standing. *E.g., City of Hope Nat'l Med. Ctr. v. HealthPlus,* Inc., 156 F.3d 223 (1st Cir. 1998); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992); *Misic v. Bldg. Serv. Employee's Health*, 789 F.2d 1374 (9th Cir. 1986). The underlying theory of this doctrine is that ERISA health care benefits are assignable. For purposes of claiming benefits under ERISA, "the assignee stands in the shoes of the assignor, and if the assignment is valid, has standing to assert whatever rights the assignor possessed." *Misic*, 789 F.2d at 1378 n.4, *cited with approval in Yarde v. Pan American Life Ins. Co.*, 67 F.3d 298 (4th Cir. 1995).

---

[2]ERISA defines a "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organizations, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

[3]ERISA defines a "beneficiary" as "a person designated by a participant or by the terms o fan employee benefit plan, who is or may become entitled to benefit thereunder." 29 U.S.C. § 1002(8).

Although the United States Court of Appeals for the Fourth Circuit has specifically held that plan administrators may not bring suit under § 1132(a)(1)(B), *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 (4th Cir. 1990), it has not addressed whether an employee organization may acquire derivative standing to bring an action under ERISA. However, other courts that have allowed the assignment of benefits under ERISA have done so only where the claimant was a healthcare provider. *E.g., City of Hope Nat. Med. Ctr.*, 156 F.3d 223; *Hermann Hosp.*, 959 F.2d 569. The United States Court of Appeals for the Eleventh Circuit explained:

> If provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to "providers[, who] are better situated and financed to pursue an action for benefits owed for their services." For these reasons, the interests of ERISA plan participants and beneficiaries are better served by allowing provider-assignees to sue ERISA plans.

*Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) (alteration in original) (internal citation omitted).

This Court declines to adopt the theory of derivative standing to allow an employee organization to bring an action as an assignee of participants and beneficiaries of an ERISA plan. The justification for allowing an assignment to a healthcare provider does not extend to an employee organization. As previously noted, allowing an assignment to a healthcare provider merely transfers the burden of bringing suit from plan participants and beneficiaries to healthcare providers. If assignments were not allowed to healthcare providers, the healthcare providers would bill the participant or beneficiary, who would then bring suit against the plan.

On the other hand, an employee organization who pays claims on behalf of the plan cannot later bill the participant or beneficiary. The participant or beneficiary would not be forced to bring suit against the plan. Allowing an assignment to an employee organization, thus, would only create a new class of parties, not determined by Congress as necessary to further the statute's purposes, that could bring suit under ERISA. *See Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 (1983) (stating that "[t]he express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes"). Application of the derivative standing doctrine to employee organizations would not adhere to ERISA's purpose, "to protect the interests of participants in employee benefit plans and their beneficiaries." *Marks v. Watters*, 322 F.3d 316, 322 (4th Cir. 2003). Accordingly, the Court concludes that Sikora, an employee organization, may not bring this action as an assignee of participants and beneficiaries of the plan.

### 2.    Sikora as a Fiduciary

Sikora also alleges that it voluntarily undertook the responsibility of a fiduciary of the plan and can, therefore, bring its claims as a fiduciary. However, in its amended answer and cross-claim, Sikora denied that it was a fiduciary of the plan. "The general rule is that 'a party is bound by the admissions of his pleadings.'" *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) (quoting *Best Canvas Prods. & Supplies v. Ploof Truck Lines*, 713 F.2d 618, 621 (11th Cir. 1983). In *Lucas*, the Court held that an admission in the pleadings was a binding judicial admission and the issue "was not only raised by the pleadings, it was admitted and therefore resolved by those pleadings." *Id.* at 1243. Accordingly, the Court finds that Sikora was not a fiduciary of the plan.

### B.     Diversity Jurisdiction

At argument, Sikora raised diversity jurisdiction as another theory of federal jurisdiction in this case. The Court declines to exercise jurisdiction on that basis because Sikora "had the burden to plead this basis . . . and it did not." *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 n.4 (11th Cir. 2003). *See also Webster County Lumber Co. v. Wayne*, 61 Fed.Appx. 63 (4th Cir. 2003) ("The only statutory sources of jurisdiction stated in the complaint and argued before the district court and on appeal by appellants are § 1331 and § 1367. We thus analyze whether jurisdiction is appropriate only under these provisions."). In its original answer and cross-claim, Sikora asserted diversity jurisdiction as the jurisdictional basis for bringing its claim in federal court. However, when it amended its answer and cross-claim, Sikora asserted jurisdiction under ERISA instead. Therefore, the Court declines to exercise jurisdiction based on diversity jurisdiction.

"[T]here is some authority that in the absence of an affirmative pleading of a jurisdictional basis a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). Here, however, Sikora has failed to clearly plead facts supporting diversity jurisdiction. Sikora's amended answer and cross-claim fails to allege the citizenship of Fidelity, Edwards and Storey. Thus, the pleadings provide no factual basis upon which the Court could determine whether complete diversity exists. Accordingly, the Court declines to exercise jurisdiction based on diversity jurisdiction.

### C.     Jurisdiction Over Remaining State Law Claims

This Court originally had jurisdiction over Plaintiff's state claims against Defendant pursuant to 28 U.S.C. § 1367. Section 1367(c)(3) provides, however, that the Court "may decline to exercise

supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."

District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). "[W]hen a district court may relinquish jurisdiction over a removed case involving [supplemental] claims, the court has discretion to remand the case to state court." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). In its discretion, the Court has considered "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. Having carefully weighed those factors, the Court declines to exercise supplemental jurisdiction over the state claims.

## V.     CONCLUSION

Based on the foregoing, the Court concludes that Sikora lacks standing to bring an action under ERISA. Therefore, the Court **GRANTS** Storey's motion for summary judgment. The Court also declines to exercise supplemental jurisdiction over the remaining state claims.

**IT IS SO ORDERED.**

Signed this 30th day of March, 2007, in Spartanburg, South Carolina.

s/ Henry F. Floyd  
HENRY F. FLOYD  
UNITED STATES DISTRICT JUDGE

11